# Exhibit 2



*June 23, 2010*
*Copyright © 2010 United States Conference of Catholic Bishops. All rights reserved.*

THE DISTINCTION BETWEEN DIRECT ABORTION AND LEGITIMATE MEDICAL PROCEDURES

*Committee on Doctrine*

On November 5, 2009, medical personnel at the St. Joseph's Hospital and Medical Center in Phoenix, Arizona, performed a procedure that caused the death of an unborn child.  Most Reverend Thomas Olmsted, the Bishop of Phoenix, has judged that this procedure was in fact a direct abortion and so morally wrong.  Some have argued that the procedure was an indirect abortion and therefore a legitimate medical procedure.  Still others have said that even the direct killing of an unborn child is sometimes permitted by Catholic teaching, and that this position is supported by certain provisions of the *Ethical and Religious Directives for Catholic Health Care Services*, a document issued by the United States Conference of Catholic Bishops containing moral principles to be applied in such cases.

The position that Church teaching supports the direct taking of unborn life has been widely reported at the national level by media outlets, which has caused some confusion among the faithful as to what the Church teaches regarding illegitimate and legitimate medical procedures used in cases where the mother's health or even life is at risk during a pregnancy. In order to clarify doubt regarding the Church's teaching on this important matter, the Committee on Doctrine, following its mandate to provide expertise and guidance concerning the theological issues that confront the Church in the United States, offers the following observations on the distinction between medical procedures that cause direct abortions and those that may indirectly result in the death of an unborn child.

1

This distinction appears in nos. 45 and 47 of the *Ethical and Religious Directive for Catholic Health Care Services*. ERD Directive no. 45 states: "Abortion (that is, the directly intended termination of pregnancy before viability or the directly intended destruction of a viable fetus) is never permitted. Every procedure whose sole immediate effect is the termination of pregnancy before viability is an abortion, which, in its moral context, includes the interval between conception and implantation of the embryo." Direct abortion is never morally permissible. One may never directly kill an innocent human being, no matter what the reason.

By contrast, in some situations, it may be permissible to perform a medical procedure on a pregnant woman that directly treats a serious health problem but that also has a secondary effect that leads to the death of the developing child. ERD Directive no. 47 states: "Operations, treatments, and medications that have as their direct purpose the cure of a proportionately serious pathological condition of a pregnant woman are permitted when they cannot be safely postponed until the unborn child is viable, even if they will result in the death of the unborn child."

The difference can be seen in two different scenarios in which the unborn child is not yet old enough to survive outside the womb. In the first scenario, a pregnant woman is experiencing problems with one or more of her organs, apparently as a result of the added burden of pregnancy. The doctor recommends an abortion to protect the health of the woman. In the second scenario, a pregnant woman develops cancer in her uterus. The doctor recommends surgery to remove the cancerous uterus as the only way to prevent the spread of the cancer. Removing the uterus will also lead to the death of the unborn child, who cannot survive at this point outside the uterus.

The first scenario describes a direct abortion. The surgery *directly* targets the life of the unborn child. It is the surgical instrument in the hands of the doctor that causes the child's death. The surgery does not directly address the health problem of the woman, for example, by

2

repairing the organ that is malfunctioning. The surgery is likely to improve the functioning of the organ or organs, but only in an *indirect* way, i.e., by lessening the overall demands placed upon the organ or organs, since the burden posed by the pregnancy will be removed. The abortion is the means by which a reduced strain upon the organ or organs is achieved. As the Church has said many times, direct abortion is never permissible because a good end cannot justify an evil means.

The second scenario describes a situation in which an urgently-needed medical procedure *indirectly* and unintentionally (although foreseeably) results in the death of an unborn child. In this case the surgery *directly* addresses the health problem of the woman, i.e., the organ that is malfunctioning (the cancerous uterus). The woman's health benefits directly *from the surgery,* because of the removal of the cancerous organ. The surgery does not directly target the life of the unborn child. The child will not be able to live long after the uterus is removed from the woman's body, but the death of the child is an unintended and unavoidable side effect and not the aim of the surgery.

There is nothing intrinsically wrong with surgery to remove a malfunctioning organ. It is morally justified when the continued presence of the organ causes problems for the rest of the body. Surgery to terminate the life of an innocent person, however, is intrinsically wrong. There are no situations in which it can be justified. Pope Pius XII summed up Catholic teaching when he stated: "As long as a man is not guilty, his life is untouchable, and therefore any act directly tending to destroy it is illicit, whether such destruction is intended as an end in itself or only as a means to an end, whether it is a question of life in the embryonic stage or in a stage of full development or already in its final stages."[1]

---

[1] Discourse to the Saint Luke Union of Italian Doctors, 12 November 1944; as cited in Congregation for the Doctrine of the Faith, *Declaration on Procured Abortion* (18 November 1974), no. 7 n. 15.

3

Pope John Paul II acknowledged that women considering abortion often face very difficult situations.

> It is true that the decision to have an abortion is often tragic and painful for the mother, insofar as the decision to rid herself of the fruit of conception is not made for purely selfish reasons or out of convenience, but out of a desire to protect certain important values such as her own health or a decent standard of living for the other members of the family. Sometimes it is feared that the child to be born would live in such conditions that it would be better if the birth did not take place.  Nevertheless, these reasons and others like them, however serious and tragic, can never justify the deliberate killing of an innocent human being.[2]

Nothing, therefore, can justify a direct abortion.  "No circumstance, no purpose, no law whatsoever can ever make licit an act which is intrinsically illicit, since it is contrary to the Law of God which is written in every human heart, knowable by reason itself, and proclaimed by the Church."[3]

---

[2] Pope John Paul II, *Evangelium Vitae*, no. 58; see also Congregation for the Doctrine of the Faith, *Declaration on Procured Abortion*, no. 14.

[3] Pope John Paul II, *Evangelium Vitae*, no. 62.