# Exhibit 10



**Office of the General Counsel**

3211 FOURTH STREET NE • WASHINGTON DC 20017-1194 • 202-541-3300 • FAX 202-541-3337

August 3, 2009

TO:         Most Reverend Archbishops and Bishops, Diocesan
            Attorneys and State Conference Directors

SUBJECT:    2009 Group Ruling

FROM:       Anthony Picarello, General Counsel   *APP*
            (Staff: Deirdre Dessingue, Associate General Counsel)

---

This memorandum relates to the Group Ruling reaffirmation letter issued to the United States Conference of Catholic Bishops on July 28, 2009 by the Internal Revenue Service ("IRS"), with respect to the federal tax status of Catholic organizations listed in the 2009 edition of the Official Catholic Directory ("OCD")[1]/. As explained in greater detail below, this ruling is important for establishing:

(1)     the exemption of such organizations from:

    (a)   federal income tax;
    (b)   federal unemployment tax (*but see* ¶4 of
        "Explanation" below); and

(2)     the deductibility, for federal income, gift and estate tax
    purposes, of contributions to such organizations.

The 2009 Group Ruling is the latest in a series that began with the original determination of March 25, 1946. In the 1946 document, the Treasury Department affirmed the exemption from federal income tax of all Catholic institutions listed in the OCD for that year. Each year since 1946, in a separate letter, the 1946 ruling has been extended to cover the institutions listed in the current OCD[2]/. The 2009 Group Ruling is generally consistent with the 2008 ruling. The annual group ruling clarifies important tax consequences for Catholic institutions listed in the OCD, and should be retained for ready reference. Rulings from prior years establish tax consequences with respect to transactions occurring during those years.

---

[1]   *A copy of the Group Ruling and this memo may be found on the USCCB website at www.usccb.org/ogc.*

[2]   *Catholic organizations with independent IRS exemption determination letters are listed in the 2009 OCD with an asterisk (\*), which indicates that such organizations are **not** covered by the Group Ruling.*

1

**Ex. 10-1**

**Responsibilities under Group Ruling.**  Diocesan officials who compile OCD information for submission to the OCD publisher are responsible for the accuracy of such information.  They must ensure that only qualified organizations are listed, that organizations are listed under their correct legal names, that organizations that cease to qualify are deleted promptly, and that newly-qualified organizations are listed as soon as possible.

## EXPLANATION

1.  **Exemption from Federal Income Tax**.  The latest ruling reaffirms the exemption from federal income tax under section 501(c)(3) of the Internal Revenue Code of "the agencies and instrumentalities and educational, charitable, and religious institutions operated, supervised or controlled by or in connection with the Roman Catholic Church in the United States, its territories or possessions appearing in the Official Catholic Directory for 2009".  *(The Group Ruling does not cover organizations listed with asterisks or any foreign organizations listed in the 2009 OCD.)*

*Verification of Exemption under Group Ruling.*  Organizations exempt under the Group Ruling generally are not included in IRS Publication 78, the IRS Exempt Organization Business Master File ("EOBMF"), or online databases derived from either of these sources. This does not mean that organizations included in the Group Ruling are not tax-exempt, that contributions to them are not deductible, or that they are not eligible for grant funding from private foundations. Organizations included in the Group Ruling that encounter difficulties verifying their tax-exempt status under the Group Ruling should refer donors, including private foundations, to IRS Publication 4573, *Group Exemptions*, available on the IRS website at www.irs.gov.  Publication 4573 explains that: (1) IRS does not determine which organizations are included in a group exemption; (2) subordinate organizations exempt under a group exemption do not receive an IRS determination letter; (3) exemption under a group ruling is verified by reference to the official subordinate listing (*e.g.*, the Official Catholic Directory); and (4) it is not necessary for an organization included in a group exemption to be listed in Publication 78 or the EOBMF. *IRS does not provide letters verifying inclusion in the Group Ruling.*

2.  **Public Charity Status**.  The latest Group Ruling affirms that organizations included in the 2009 OCD are <u>not</u> private foundations under section 509(a) of the Code.  Newly-created or newly-affiliated organizations must establish that they are not private foundations as a condition of inclusion in the Group Ruling and OCD.

2

**Ex. 10-2**

*Verification of Public Charity Status.*  The Group Ruling states that organizations covered under its provisions are public charities under section 509(a), but does not specify the subsection of section 509(a) under which they are classified because all covered organizations do not share a common classification.  Although USCCB is classified as a public charity under sections 509(a)(1) and 170(b)(1)(A)(i), that classification does not extend to organizations covered under the Group Ruling.  Each organization must establish its own public charity classification under section 509(a)(1), 509(a)(2) or 509(a)(3).

As a result of requirements imposed by the Pension Protection Act of 2006 with respect to private foundation grants to section 509(a)(3) supporting organizations, private foundations may require more specific documentation of public charity status under section 509(a)(1), 509(a)(2), 509(a)(3)-Type I or 509(a)(3)-Type II.

Certain types of organizations included in the Group Ruling qualify as public charities by definition under the Code.  These are:

- churches and conventions and associations of churches under sections 509(a)(1) and 170(b)(1)(A)(i) [generally limited to dioceses, parishes, religious orders, and state Catholic conferences];

- elementary and secondary schools, colleges and universities under sections 509(a)(1) and 170(b)(1)(A)(ii); and

- hospitals under sections 509(a)(1) and 170(b)(1)(A)(iii).

Other organizations covered under the Group Ruling may qualify under the public support tests of either sections 509(a)(1) and 170(b)(1)(A)(vi) or section 509(a)(2).  Verification of public charity classification under either of the support tests generally can be established by providing a written declaration of the applicable classification signed by an officer of the organization, along with a reasoned written opinion of counsel and a copy of the support test portion of Form 990, if applicable.  A section 509(a)(3) organization included in the Group Ruling should be able to rely upon a written declaration of the applicable supporting organization classification signed by an officer of the organization, along with a reasoned written opinion of counsel and Form 990, if applicable, to satisfy foundation grantors of their Type I or Type II supporting organization status.

3. **Deductibility of Contributions**.  The Group Ruling assures donors that contributions to the institutions listed in the 2009 OCD and covered by the Group Ruling are deductible for federal income, gift, and estate tax purposes.

**Ex. 10-3**

4.  **Unemployment Tax**.  The Group Ruling establishes exemption from *federal* unemployment tax only.  Individual states may impose unemployment tax on organizations included in the Group Ruling, even though they are exempt from the federal tax.  Please refer to your local tax advisor any questions you may have about state unemployment tax.

5.  **Social Security Tax**.  All section 501(c)(3) organizations, including churches, are required to withhold and pay taxes under the Federal Insurance Contributions Act (FICA) for each employee.[3]  However, services performed by diocesan priests in the exercise of their ministry are not considered "employment" for FICA (Social Security) purposes.[4]  FICA should not be withheld from their salaries.  *For Social Security purposes*, diocesan priests are subject to self-employment tax ("SECA") on their salaries as well as on the value of meals and housing or housing allowances provided to them.[5]  Neither FICA nor income tax withholding is required on remuneration paid directly to religious institutes for members who are subject to vows of poverty and obedience and are employed by organizations included in the Official Catholic Directory.[6]

6.  **Federal Excise Tax**.  Inclusion in the Group Ruling has no effect on an organization's liability for federal excise taxes.  Exemption from these taxes is very limited.  Please refer to your local tax advisor any questions you may have about excise taxes.

7.  **State/Local Taxes**.  Inclusion in the Group Ruling does not automatically establish an organization's exemption from state or local income, sales or property taxes.  Typically, separate exemptions must be obtained from the appropriate state or local tax authorities in order to qualify for any applicable exemptions.  Please refer to your local tax advisor any questions you may have about state or local tax exemptions.

---

[3]  *Section 3121(w) of the Code permits certain church-related organizations to make an irrevocable election to avoid payment of FICA taxes, but only if such organizations are opposed for religious reasons to payment of social security taxes.*

[4]  *I.R.C. § 3121(b)(8)(A).*

[5]  *I.R.C.  §  1402(a)(8).  See  also,  Compensation  of  Priests,  at http://www.usccb.org/bishops/dfi/dualtax.htm.*

[6]  *Rev. Rul. 77-290, 1977-2 C.B. 26.  See also, OGC/LRCR Memorandum on Compensation of Religions, http://www.usccb.org/ogc/RelComp2006.pdf* (September 11, 2006).

4

**Ex. 10-4**

8.    **Form 990**.  All organizations included in the OCD must file Form 990, Return of Organization Exempt from Income Tax, *unless* they are eligible for a mandatory or discretionary exception to this filing requirement. ***There is no automatic exemption from the Form 990 filing requirement simply because an organization is included in the Group Ruling or listed in the OCD.*** Organizations required to file Form 990 must do so by the 15th day of the fifth month after the close of their fiscal year.[7]  Among the organizations not required to file Form 990 under section 6033 of the Code are: (i) churches; (ii) integrated auxiliaries of churches[8]; (iii) the exclusively religious activities of religious orders; (iv) schools below college level affiliated with a church or operated by a religious order; (v) organizations with gross receipts normally not in excess of $25,000;[9] and (vi) certain church-affiliated organizations that finance, fund or manage church assets, or maintain church retirement insurance programs, and organizations controlled by religious orders that finance, fund or manage assets used for exclusively religious activities.[10]

*Special Rules for Section 509(a)(3) Supporting Organizations.*  The Pension Protection Act of 2006 eliminated discretionary exceptions to the Form 990 filing requirement as applied to section 509(a)(3) supporting organizations.  The discretionary exceptions likely to be affected by this provision are exceptions (v) and (vi) above.  This means that if an organization exempt under the Group Ruling is classified as a section 509(a)(3) supporting organization, it may no longer rely on exceptions (v) or (vi) above as the basis for not filing Form 990.  However, a section 509(a)(3) supporting organization that qualifies as an

---

[7]    *The penalty for failure to file the Form 990 is $20 for each day the failure continues, up to a maximum of $10,000 or 5 percent of the organization's gross receipts, whichever is less.  However, organizations with annual gross receipts in excess of $1 million are subject to penalties of $100 per day, up to a maximum of $50,000.  I.R.C. § 6652(c)(1)(A).*

[8]    *I.R.C. § 6033(a)(3)(A)(i); Treas. Reg. § 1.6033-2(h).  To qualify as an integrated auxiliary of a church, an organization must be described in section 501(c)(3), qualify as other than a private foundation, be affiliated with a church, and qualify as internally supported.  An organization will be considered internally supported unless it both:*

(1)    *Offers admissions, goods, services, or facilities for sale, other than on an incidental basis, to the general public (except goods, services, or facilities sold at a nominal charge or substantially below cost), and*

(2)    *normally receives more than 50 percent of its support from a combination of governmental sources;  public solicitation of contributions (such as through a community fund drive);  and receipts from the sale of admissions, goods, performance of services, or furnishing of facilities in activities that are not unrelated trades or businesses.*

[9]    *Rev. Proc. 83-23, 1983-1 C.B. 687.*

[10]    *Rev. Proc. 96-10, 1996-1 C.B. 577.*

**Ex. 10-5**

integrated auxiliary of a church under section 6033 may continue to rely on that exception as a basis for not filing Form 990. Because it is a statutory exception, the integrated auxiliary of the church exception was not affected by the Pension Protection Act.

*Form 990-N Filing Requirements.* Under the Pension Protection Act of 2006, an organization exempt under the Group Ruling that claims exception (v) above (gross receipts normally not in excess of $25,000) as its sole basis for not filing Form 990 must file annual electronic Form 990-N ("e-postcard") as required by IRS, setting forth the following information: (1) the legal name of the organization; (2) any name under which the organization operates or does business; (3) the organization's mailing address and Internet website address; (4) the organization's EIN; (5) the name and address of a principal officer; (6) evidence of the organization's continued qualification for exemption from the Form 990 filing requirement; and (7) notification of termination, if applicable. Form 990-N must be submitted electronically through the IRS website on or before the 15th day of the fifth calendar month following the close of the fiscal year for which it is filed.[11]

*Public Disclosure and Inspection.* Any organization that is required to file either Form 990 or Form 990-N must upon request make a copy of the form and its schedules and attachments (other than Form 990 contributor lists) available for public inspection during regular business hours at the organization's principal office and at any regional or district offices having three or more employees. Form 990 or Form 990-N for a particular year must be made available for a three year period beginning with the due date of the return.[12] In addition, any organization that files Form 990 or Form 990-N must comply with written or in-person requests for copies of the form. The organization may impose no fees other than a reasonable fee to cover copying and mailing costs. If requested, copies of the forms for the past three years must be provided. In-person requests must be satisfied on the same day. Written requests must be satisfied within 30 days.[13]

---

[11] *Temporary Regulations: Notification Requirement for Tax-Exempt Entities Not Currently Required to File, 72 Fed.Reg. 64147 (November 15, 2007).*

[12] *The penalty for failure to permit public inspection of the Form 990 is $20 for each day during which such failure continues, up to a maximum of $10,000. I.R.C. § 6652(c)(1)(C).*

[13] *I.R.C. § 6104(d). Generally, a copy of an organization's exemption application and supporting documents must also be provided on the same basis. However, since Catholic organizations covered under the Group Ruling did not file exemption applications with IRS, nor did USCCB, organizations covered under the Group Ruling should respond to requests for public inspection and written or in-person requests for copies by providing a copy of the page of the current OCD on which they are listed. If a covered organization does not have a copy of the current OCD, it has two weeks within which to make it available for inspection and to comply with in-person requests for copies. Written requests must be satisfied within the general time limits.*

**Ex. 10-6**

*Public Disclosure of Form 990-T.*  Under the Pension Protection Act of 2006, Form 990-T, Exempt Organization Unrelated Business Income Tax Return, is subject to the same public inspection and copying rules that apply to Forms 990 and 990-N.

*Revocation for Failure to File.*  Under the Pension Protection Act of 2006, the tax-exempt status of an organization, including an organization exempt under the Group Ruling, that is required to file either Form 990 or Form 990-N but that fails to do so for three consecutive years will be considered revoked. Reapplication to IRS (not through the Group Ruling process) will be required in order to reinstate exemption.

9.   **Revenue Procedure 75-50**.  Rev. Proc. 75-50[14]/ sets forth notice, publication, and recordkeeping requirements regarding racially nondiscriminatory policies with which private schools, including church-related schools, must comply as a condition of establishing and maintaining exempt status under section 501(c)(3) of the Code.  Under Rev. Proc. 75-50 private schools are required to file an annual certification of racial nondiscrimination with the IRS.  For private schools not required to file Form 990, the annual certification must be filed on Form 5578, Annual Certification of Racial Nondiscrimination for a Private School Exempt from Federal Income Tax.  This form is available at www.irs.gov.  Form 5578 must be filed by the 15th day of the fifth month following the close of the fiscal year.  Form 5578 may be filed by an individual school or by the diocese on behalf of all schools operated under diocesan auspices.  The requirements of Rev. Proc. 75-50 remain in effect and must be complied with by all schools listed in the OCD.  *Diocesan or school officials should ensure that the requirements of Rev. Proc. 75-50 are met since failure to do so could jeopardize the tax-exempt status of the school and, in the case of a school not legally separate from the church, the tax-exempt status of the church itself.*

10.   **Lobbying Activities**.  Organizations exempt under the Group Ruling may lobby for changes in the law, provided such lobbying is not more than an insubstantial part of their total activities.  Attempts to influence legislation both directly and through grassroots lobbying are subject to this restriction.  The term "lobbying" includes activities in support of or in opposition to referenda, constitutional amendments, and similar ballot initiatives.  There is no distinction between lobbying activity that is related to an organization's exempt purposes and lobbying that is not.  There is no fixed percentage that constitutes a safe harbor for "insubstantial" lobbying.  Please refer to your local tax advisor any questions you may have about permissible lobbying activities.

---

[14]    *1975-2 C.B. 587.*

**Ex. 10-7**

11. **Political Activities**.  *Organizations exempt under the Group Ruling may not participate or intervene in any political campaign on behalf of or in opposition to any candidate for public office.  Violation of the prohibition against political campaign intervention can jeopardize the organization's tax-exempt status.*  In addition to revoking tax-exempt status, IRS may also impose excise taxes on an exempt organization and its managers on account of political expenditures.  Where there has been a flagrant violation, IRS has authority to seek an injunction against the exempt organization and immediate assessment of taxes due.  The Office of General Counsel memorandum, *Political Campaign Activity Guidance for Catholic Organizations*, available at www.usccb.org/ogc, contains detailed information regarding the prohibition against political campaign intervention.  If you have any questions in this regard, please refer them to your local tax advisor.

12. **Group Exemption Number**.  The group exemption number assigned to the USCCB Group Ruling is 0928.  *This number must be included on each Form 990, Form 990-T, and Form 5578 required to be filed by any organization exempt under the Group Ruling.*[15/]  We advise *against* using the group exemption number on Form SS-4, Request for Employer Identification Number, because in the past this has resulted in IRS improperly including USCCB as part of the organization's name when it enters the organization in its database.

---

[15]  *IRS has expressed concern about organizations covered under the Group Ruling that fail to include the group exemption number (0928) on their Form 990 filings, particularly the initial filing.*

**Ex. 10-8**

**Internal Revenue Service**
P. O. Box 2508
Cincinnati, OH 45201

Department of the Treasury

Date: **JUL 28 2009**

United States Conference of Catholic Bishops
3211 4th Street, N.E.
Washington, D.C. 20017-1194

**Person to Contact:**
Roger Meyer
**Toll Free Telephone Number:**
877-829-5500
**Employer Identification Number:**
53-0196617
**Group Exemption Number:**
0928

Dear Sir or Madam:

In a ruling dated March 25, 1946, we held that the agencies and instrumentalities and all educational, charitable and religious institutions operated, supervised, or controlled by or in connection with the Roman Catholic Church in the United States, its territories or possessions appearing in *The Official Catholic Directory* 1946, are entitled to exemption from Federal income tax under the provisions of section 101(6) of the Internal Revenue Code of 1939, which corresponds to section 501(c)(3) of the 1986 Code. This ruling has been updated annually to cover the organizations added to or deleted from the Directory.

*The Official Catholic Directory* for 2009 shows the names and addresses of all agencies and instrumentalities and all educational, charitable, and religious institutions operated by the Roman Catholic Church in the United States, its territories and possessions in existence at the time the Directory was published. It is understood that each of these is a non-profit organization, that no part of the net earnings thereof inures to the benefit of any individual, that no substantial part of their activities is for promotion of legislation, and that none are private foundations under section 509(a) of the Code.

Based on all information submitted, we conclude that the agencies and instrumentalities and educational, charitable, and religious institutions operated, supervised, or controlled by or in connection with the Roman Catholic Church in the United States, its territories or possessions appearing in *The Official Catholic Directory* for 2009 are exempt from Federal income tax under section 501(c)(3) of the Code.

Donors may deduct contributions to the agencies, instrumentalities and institutions referred to above, as provided by section 170 of the Code. Bequests, legacies, devises, transfers, or gifts to them or for their use are deductible for Federal estate and gift tax purposes if they meet the applicable provisions of sections 2055, 2106, and 2522 of the Code.

Beginning January 1, 1984, unless specifically excepted, you and your subordinates must pay tax under the Federal Insurance Contributions Act (FICA) for each employee who is paid $100 or more in a calendar year, as indexed for inflation. You and your subordinates are not liable for the tax under the Federal Unemployment Tax Act (FUTA).

**Ex. 10-9**

The conditions concerning the retention of your group exemption as set forth in our previous determination letter dated August 17, 1983, remain in full force and effect.

Sincerely,

Cindy Westcott

Cindy Westcott
Manager, Exempt Organizations
Determinations

# USCCB GROUP RULING (GEN 0928)

## PROCEDURES FOR INCLUSION
### *(Effective December 1, 2009)*

---

1. **What Organizations Should Apply?**  Any newly-created, newly-acquired or newly-affiliated Catholic nonprofit organization seeking to qualify for exemption from federal income tax under section 501(c)(3) of the Internal Revenue Code ("Code") through inclusion in the USCCB Group Ruling must file an application for inclusion in the Official Catholic Directory ("OCD").

In addition, any Catholic organization that is currently included in the Group Ruling but that reincorporates or otherwise changes its corporate form (*e.g.*, from association to trust or corporation) constitutes a new legal entity for IRS purposes, and consequently must file a new application.

---

2. **What Organizations are Not Eligible for Inclusion in the Group Ruling?**
Several categories of organizations are not eligible for inclusion in the Group Ruling:

- Any organization already listed in the Official Catholic Directory

- Any organization that has already received a determination letter from IRS recognizing it as exempt under section 501(c)(3)  [*See Q/A # 9 & 10*]

- Any organization that has been denied recognition of section 501(c)(3) status by IRS

- Any organization recognized as exempt under a Code section other than section 501(c)(3)

- Any organization to which contributions are not deductible

- Any Type III supporting organization under section 509(a)(3)

- Any organization created or incorporated in a foreign country

- Any organization that serves as conduit for contributions to a foreign organization(s)

**Ex. 10-11**

- Any organization the purpose of which is to manage or invest funds of a foreign organization(s)

- Any organization the primary purpose of which is the operation of donor advised funds

- Any organization formed with for-profit entities or individuals to engage in joint ventures, partnerships, LLCs, co-ownership, or similar arrangements [*including tax-credit limited partnerships and similar arrangements*]

- Any organization that is a successor to a for-profit entity

- Any limited liability company (LLC)

- Any health maintenance organization (HMO)

- Any individual practice association

- Any preferred provider organization

- Any physician practice [*other than a medical clinic serving the indigent*]

- Any organization the net earnings of which inure to the benefit of any private shareholder of individual

- Any organization engaged, as more than an insubstantial part of its activities, in carrying on propaganda or attempting to influence legislation

- Any organization that participates or intervenes in political campaigns on behalf of or in opposition to any candidate for public office

- Any organization eligible as a subordinate under another group ruling, *e.g.,* a council or conference of the St. Vincent de Paul Society

- Any council or conference of the Knights of Columbus, Knights of Peter Claver, or other fraternal society

3. **How Does an Organization Apply?**  An organization should complete and submit the application for inclusion in the USCCB Group Ruling (effective September 1, 2009) to the Chancery Office of the diocese in which its principal office is located.  Since the identity of the diocesan official charged with responsibility for reviewing applications for inclusion in the OCD varies from diocese to diocese, the applicant organization should call the Chancery to determine to whom applications should be directed. The organization must also submit any additional required documentation, including its

**Ex. 10-12**

EIN[1], organizing document, bylaws, financial statements, and all required schedules and attachments.  Incomplete applications will not be processed.

4. **When Should An Organization Apply?**  In order to ensure that exemption under the Group Ruling is retroactive to the date of creation or incorporation, an organization must obtain written diocesan approval of its inclusion in the USCCB Group Ruling within 15 months of the end of the month in which it was created or incorporated. Thus, an organization should apply as soon as possible after creation or incorporation, consistent with its ability to provide sufficiently detailed information about its operations and finances to permit a decision about eligibility.  Organizations should also be mindful of the annual OCD publication deadlines.   Generally, this means that an organization will need to obtain written diocesan approval by November of a given calendar year in order to ensure inclusion in the following year's edition of the OCD.

5. **Must An Organization Included in the Group Ruling File a New Application When It Undertakes a New Activity or Ministry or Acquires a New Property?**  Tax exemption under the Group Ruling applies to all of an organization's activities, ministries, funds and properties (with the exception of activities that constitute unrelated business activities).  Accordingly, no application should be filed for a new activity, fund, ministry or property of an existing organization, unless such activity, property, or fund is separately incorporated or otherwise established as a separate legal entity under state law.

6. **How Does a Diocese Notify an Applicant of the Outcome of Its Review?** After careful legal review of an organization's application and all supporting documentation, the diocese will determine whether the organization qualifies for inclusion in the Group Ruling.  If an adverse decision is made, the diocese will notify the organization in writing.  There are no appeals from adverse diocesan decisions regarding inclusion in the Group Ruling.   If a favorable decision is made, the diocese will notify the applicant organization by letter, which will provide evidence of the organization's inclusion in the Group Ruling in the interim until issuance of the next edition of the OCD.  The diocesan approval letter will also confirm the public charity classification under which the organization has qualified, and will instruct the organization to inform the diocese of any name or address change, or any material change in activities, governance, or sources of support.

---

[1]     An organization that does not have an EIN may obtain the EIN by filing Form SS-4 with IRS, according to the instructions.  The organization should not state that it is included in the USCCB Group Ruling when filing its Form SS-4, because at the time the organization files Form SS-4 it has not been determined to be part of the Group Ruling.

**Ex. 10-13**

7. **What Are the Major Consequences of Being Included in the Group Ruling?**  An organization that receives written notification from the diocese of its inclusion in the Group Ruling is recognized as exempt from federal income tax under section 50l(c)(3) of the Code.  Contributions are deductible for federal income, gift, and estate tax purposes.  The organization is also exempt from federal unemployment tax.  However, the states may impose unemployment tax on certain nonprofit organizations even though they are exempt from federal tax.  Inclusion in the Group Ruling does *not* automatically establish exemption from federal excise taxes or from any state or local taxes.  Organizations should consult their tax advisors concerning liability for these other taxes.  In addition, organizations covered by the Group Ruling, including churches, must pay and withhold Social Security ("FICA") taxes for lay employees.

8. **Does Inclusion in the Group Ruling Relieve an Organization of the Form 990 (Annual Information Return) Filing Requirement?**  Inclusion in the Group Ruling does *not* automatically relieve an organization of the requirement to file Form 990.   The general rule is that all tax-exempt organizations must file Form 990, unless they qualify for an exemption.  Dioceses, parishes, and church- or religious institute-sponsored elementary and secondary schools are exempt from the Form 990 filing requirement.  Other organizations should consult their tax advisors to determine whether they qualify for one of the mandatory or discretionary exceptions to the Form 990 filing requirement.

9. **May an Organization with an Independent IRS Exemption Letter Ever be Included in the OCD?**  Certain Catholic organizations that have obtained independent recognition of section 501(c)(3) exemption directly from IRS (by submitting Form 1023) may wish to be identified as "Catholic" through listing in the OCD.  However, because such organizations have obtained an independent IRS exemption determination letter, they are ineligible for inclusion in the Group Ruling.  Within the sole discretion of the diocese, and upon verification that an organization has a sufficient relationship to the Church, such organization *may* be included in the OCD with an asterisk placed next to its name to signify that it has its *own* IRS exemption determination letter and is *not* included in the Group Ruling.  Subordinates in another Group Ruling do *not* qualify for asterisked listing in the OCD.

10. **How Does a Catholic Organization with an Independent IRS Determination Letter Apply for an Asterisked Listing in the OCD?**  A Catholic organization with an independent IRS exemption determination letter must submit a written request for asterisked inclusion in the OCD to the appropriate diocesan official, and  provide the following documentation: (1) Completed sections A, B, C, and E of the Group Ruling application; (2) detailed narrative description of its activities; (3) copy of its

**Ex. 10-14**

organizing document; (4) copy of its bylaws; (5) copy of the IRS determination letter that establishes that it is exempt under section 501(c)(3), is not a private foundation under section 509(a), and is eligible for deductible contributions under section 170; (6) copy of its most recent Form 990, if required to file; and (7) a statement, signed by an authorized officer of the organization, that its activities, purposes, and sources of support have not changed materially since the date of its IRS determination letter.  The diocese is free to request any *additional* documentation it deems appropriate.  After review, the diocese will determine whether it wishes to authorize an asterisked listing in the OCD.  There is no appeal from an adverse decision regarding asterisked listings in the OCD.

The Church relationship standards (Section E of the Application) for an asterisked OCD listing are the same as for inclusion under the Group Ruling.  An organization that has been denied inclusion in the Group Ruling for failure to establish sufficient relationship to the Church should not be approved for an asterisked listing in the OCD in the event the organization subsequently establishes exemption directly from IRS.

**Ex. 10-15**

## USCCB GROUP RULING (GEN 0928)

## APPLICATION FOR INCLUSION
### *(Effective December 1, 2009)*

\* \* \* \* \*

### A.  APPLICANT INFORMATION

Name:  _____

Address:  _____

_____

_____

Telephone:  _____   Fax:  _____

Website:  _____

EIN:  _____

Contact Name:  _____   Title:  _____

### B.  ORGANIZATIONAL INFORMATION

1.  **Form of Organization:**

_____  **Corporation** *(attach articles of incorporation showing proof of state filing and bylaws)*

_____  **Trust** *(attach copy of trust agreement with signatures and date)*

_____  **Association** *(attach articles of association, constitution or other organizing document showing date of formation and signatures and bylaws)*

2.  **Date of Incorporation/Formation:**  _____

3.  **State of Incorporation/Formation:**  _____

4.  **Does your organizing document include a clause that limits your purposes to §501(c)(3) exempt purposes?**  _____   *[Indicate page, article, paragraph _____ ]*

**Ex. 10-16**

**5.  Does your organizing document include a dissolution clause limiting the use of your remaining assets for §501(c)(3) purposes?  _____**  *[Indicate page, article, paragraph _____ ]*

## C.  GOVERNANCE INFORMATION

***GOVERNING BODY***  *List the name and title of each member of your governing body. Also indicate the office, if any, held in another Church organization(s).*

***Name***                              ***Title***                              ***Other Church Office***

***OFFICERS***  *List the name and title of each officer, and indicate the office, if any, held in another Church organization(s).*

***Name***                              ***Title***                              ***Other Church Office***

## D.  ELIGIBILITY SCREEN  *If your organization answers yes to any of the questions below, it is NOT ELGIBLE for inclusion in the USCCB Group Ruling.  DO NOT SUBMIT THIS APPLICATION.*

**1.  Is your organization currently included in the USCCB Group Ruling by virtue of another Official Catholic Directory listing?  _____**

**Ex. 10-17**

**2.  Has your organization received a determination letter from IRS recognizing it as exempt from federal income tax under §501(c)(3)? _____**

**3.  Has your organization been denied recognition of §501(c)(3) status by IRS? _____**

**4.  Has IRS recognized your organization as exempt under a Code section other than §501(c)(3)? _____**

**5.  Was your organization created or incorporated in a foreign country? _____**

**6.  Does your organization serve as a conduit for contributions to a foreign organization(s)? _____**

**7.  Is your organization's purpose to manage or invest funds of a foreign organization(s)? _____**

**8.  Is your organization's primary purpose the sponsorship of donor advised funds? _____**

**9.  Is your organization a Type III supporting organization under section 509(a)(3)? _____**

**10.  Is your organization formed with for-profit entities or individuals to engage in joint ventures, partnerships, LLCs, co-ownership, or similar arrangements? _____** *[This includes tax-credit limited partnerships and similar arrangements.]*

**11.  Is your organization a successor to a for-profit entity? _____**

**12.  Is your organization a limited liability company ("LLC") _____**

**13.  Is your organization a health maintenance organization? _____**

**14.  Is your organization an individual practice association? _____**

**15.  Is your organization a preferred provider organization? _____**

**16.  Is your organization a physician medical practice? _____** *[This does not include medical clinics serving the indigent.]*

**17.  Does any part of your organization's net earnings inure to the benefit of any private shareholder of individual? _____**

**18.  Does more than an insubstantial part of your organization's activities consist of carrying on propaganda or attempting to influence legislation? _____**

**Ex. 10-18**

**19. Does your organization participate or intervene in political campaigns on behalf of or in opposition to any candidate for public office? _____**

**20. Is your organization included in or eligible for inclusion in another group ruling, *e.g.,* Knights of Columbus, Knights of Peter Claver, St. Vincent de Paul? _____**

## E. RELATIONSHIP TO THE CHURCH IN THE UNITED STATES

*[To qualify for inclusion in the Group Ruling, your organization must establish that it possesses a significant relationship to a U.S. diocese, U.S. parish, U.S. religious order, or some other Church entity organized in the U.S. The following questions are designed to gather information about your organization's relationship to the Church.]*

**1. Is your organization controlled by a U.S. diocese or parish, U.S. religious order, or other Church entity organized in the U.S.? _____ If yes, please identify the organization _____ by which it is controlled and the page on which that organization is included in the current Official Catholic Directory. _____ Please indicate the page, article, or paragraph of your organizing document or bylaws that establishes this control relationship. _____**

**2. Does your organization's governing board include individuals who also serve on the governing board of or in a governing capacity with respect to a U.S. diocese or parish, a U.S. religious order, or another Church entity organized in the U.S.? _____ If yes, please identify the organization _____ _____ and the page on which that organization is listed in the current Official Catholic Directory. _____ Please indicate the page, article, or paragraph of your organizing document or bylaws that establishes this relationship. _____**

**3. Please any of the following characteristics that apply to your organization.** *[In a separate attachment, provide additional relevant information.]*

**\_\_\_\_\_ *ex officio* board members holding other Church offices**
*[indicate page, article, or paragraph of organizing document/bylaws]*
**\_\_\_\_\_ indirect control by Church entity**
*[attach detailed statement explaining the nature of this indirect control]*
**\_\_\_\_\_ reserved powers in bishop, diocese, parish, religious order, other Church entity** *[indicate page, article, or paragraph of organizing document/bylaws]*
**\_\_\_\_\_ veto power by bishop, diocese, parish, religious order, other Church entity**
*[indicate page, article, or paragraph of organizing document/bylaws]*

4

**Ex. 10-19**

_____ **formal policy of adherence to Church teachings/practices as determined by diocesan bishop** *[indicate page, article, or paragraph of organizing document/bylaws]*

_____ **assets distributed on dissolution to diocese, parish, religious order, other Church entity** *[indicate page, article, or paragraph of organizing document/ bylaws]*

_____ **status under Canon Law as a public juridic person** *[provide statutes and documentation of episcopal approval]*

_____ **other relationship to Church** *[provide detailed explanation]*

---

## F.  ACTIVITIES

**1.  In an attachment, please provide a detailed, narrative description of your past, present, and planned activities.  Do not simply restate the purposes set forth in your organizing document.**

**2a.  Does your organization intend to maintain any donor advised funds?  _____**

**  b.  If yes, please provide a detailed explanation of how you intend to operate these funds, including copies of donor agreements, notices, policy statements, brochures, etc.**

**3a.  Does or will your organization attempt to influence legislation?  _____**

**  b.  If yes, how and on what issues do or will you attempt to influence legislation?**

**  c.  What percentage of your total activities do or will such attempts to influence legislation constitute?  _____**

---

## G.  FINANCIAL DATA/FUNDRAISING

**1.  List your (anticipated) sources of financial support in order of size.**

**Ex. 10-20**

**2. Does your organization engage or plan to engage in fundraising activities?  If yes, please list the type of fundraising and a description of each.**

**3. Financial Data.**  *Go to <u>www.irs.gov</u>.  Locate IRS Form 1023.  Copy and complete <u>Part IX, Financial Data, Parts A and B</u> according to the instructions.  Attach completed Part IX to this application.*

---

**H.  PUBLIC CHARITY STATUS**
*[Select the appropriate public charity status below and attach additional documentation as required.]*

**Your organization is not a private foundation because it is classified under:**

**_____   509(a)(1) and 170(b)(1)(A)(i) – church** *[diocese, parish or religious order]*

**_____   509(a)(1) and 170(b)(1)(A)(i) – convention or association of churches**
                                        *[state Catholic conference]*

**_____   509(a)(1) and 170(b)(1)(A)(ii) – school** *[complete and attach Schedule B from
                                        IRS Form 1023]*

**_____   509(a)(1) and 170(b)(1)(A)(iii) – hospital** *[complete and attach Schedule C from
                                        IRS Form 1023]*

**_____   509(a)(1) and 170(b)(1)(A)(vi) – organization that receives a substantial part of its financial support in the form of contributions from publicly supported organizations, from governmental units, or from the general public** *[Submit completed <u>Schedule A, Part II, Support Schedule</u> from IRS Form 990 to verify this classification.]*

6

**Ex. 10-21**

_____ **509(a)(2) – organization that normally receives more than one-third of its financial support from gifts, grants, contributions, membership fees, and gross receipts from its exempt activities *and* not more than one-third of its financial support from gross investment income and the excess of unrelated business taxable income over the amount of unrelated business income tax** *[Submit Schedule A, Part III, Support Schedule from IRS Form 990 to verify this classification.]*

_____ **509(a)(3) – organization supporting one or more organizations listed above ("supported organizations") and, with respect to such supported organizations, is either:**

   _____ **Type I – "operated, supervised or controlled by"**
            or
   _____ **Type II – "supervised or controlled in connection with"**

*[Organizations claiming section 509(a)(3) status must also provide the supplemental information in Section I below.]*

---

**I.  SECTION 509(a)(3) SUPPLEMENTAL INFORMATION**
*[This information must be completed by any organization claiming status as a section 509(a)(3) supporting organization.  Check the relationship (Type I or Type II) under which your organization qualifies and provide the requested information.]*

_____  **Type I – "operated supervised or controlled by"**

**1.  Identify your supported organization(s):**
       *Name*        *Diocese*      *OCD Page*

**2.  Is each supported organization listed in #1 above a public charity under §509(a)(1) or §509(a)(2)?** _____

**3.  Does your organizing document state that you are "organized and at all times operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of …" one or more section 509(a)(1) or 509(a)(2) organizations [either named specifically or identified by class]?** _____

**Ex. 10-22**

**4.  Does your organizing document specify your supported organization(s) by: name _____ or by charitable class _____?** *[Indicate the page, article, paragraph _____]* **Are these supported organizations Catholic entities? _____**

**5.  Is a majority of your governing board or officers elected or appointed by your supported organization(s)? _____**

**6a. Describe the process by which your governing board is appointed or elected.**

**b. Is this a self-perpetuating board? _____**

**7.  Is your organization controlled, either directly or indirectly, by disqualified persons (with the exception of your foundation managers and your supported organizations) with respect to you, or by persons in a family or business relationship with such disqualified persons? _____**

**8.  Does or will your organization accept any gift or contribution from a person (other than a section 509(a)(1) or (2) organization) who directly or indirectly controls (alone or together with others) the governing body of one of your supported organizations, or from a relative or controlled entity with respect to such person? _____**

* * * * * * * *

**_____    Type II – "supervised or controlled in connection with"**

**1.  Identify your supported organization(s):**

| *Name* | *Diocese* | *OCD Page* |
|---|---|---|
| | | |

**2.  Is each supported organization listed in #1 above a public charity under §509(a)(1) or §509(a)(2)? _____**

**Ex. 10-23**

3.  Does your organizing document state that you are "organized and at all times operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of …" one or more section 509(a)(1) or 509(a)(2) organizations [either named specifically or identified by class]?  _____

4.  Does your organizing document specify the supported organization(s) by: name  _____  or by charitable class _____?  *[Indicate the page, article, paragraph _____]* Are these supported organizations Catholic entities?  _____

5.  Does a majority of your governing board consist of individuals who also serve on the governing board of the supported organization(s)?  _____

6a. Describe the process by which your governing board is appointed or elected.

  b. Is this board a self-perpetuating board?  _____

7.  Is your organization controlled, either directly or indirectly, by disqualified persons (with the exception of your foundation managers and your supported organizations) with respect to you, or by persons in a family or business relationship with such disqualified persons?  _____

---

J.  HOMES FOR THE ELDERLY OR HANDICAPPED
*[In an attachment or the space provided, please supply the following information.]*

1.  Describe the type of housing your organization provides.

2.  Explain how the public is made aware of your facility.

3.  Provide copies of your organization's admission application forms.

4a.  Provide a description of each facility your organization operates.
  b.  Indicate whether residents at each facility rent or purchase housing.
  c.  Indicate the total number of residents each facility can accommodate.
  d.  Indicate the current number of residents at each facility.

**Ex. 10-24**

5. Provide a sample copy of your organization's residency or homeownership contract or agreement.

6. Do you or will you contract with another organization to develop, build, market or finance your housing? _____ If yes, identify the entity, explain how it is selected, how the terms of any contract(s) are negotiated at arm's length, and how your organization determines it will pay no more than fair market value for services provided.

7. Do you or will you manage your activities or facilities through your own employees or volunteers? _____ If no, provide a statement describing the activities that will be managed by others, the names of the persons or organizations that mange or will mange your activities or facilities, and how these managers were or will be selected. Explain the major terms of any contracts (or provide copies), how the contracts or other agreements were or will be negotiated, and explain how you determine you will pay no more than fair market value for services provided.

8. Do you participate in any government housing programs? _____ If yes, please describe the programs.

9. Does your organization own the facility? _____ If no, explain from whom and on what basis you are leasing it.

10. If your organization provides housing for the elderly, describe who qualifies for your housing in terms of age, infirmity or other criteria. Explain how you select persons for your housing.

11. If your organization provides housing for the handicapped, describe who qualifies for your housing in terms of disability, income levels, or other criteria. Explain how you select persons for your housing.

12. Do you charge an entrance or founder's fee? _____ If yes, identify the fee, describe what the fee covers, whether it is a one-time fee, how the fee is determined, whether the fee is payable in a lump sum or on an install-ment basis, whether it is refundable, and the circumstances under which it may be waived.

13. Do you charge periodic fees or maintenance charges? _____ If yes, Describe the charges, what they cover and how they are determined.

14. Is your housing affordable to a significant segment of the elderly or handicapped persons in the community? _____ Identify your community. _____ Explain how you determine your housing is affordable.

**Ex. 10-25**

15.  Do you have an established policy concerning residents who become unable to pay their regular charges?  _____  If yes, describe your established policy.  How do you make this policy known to residents?

16.  Do you have arrangements with government welfare agencies or others to absorb all or part of the cost of maintaining residents who become unable to pay their regular charges? _____  If yes, describe these arrangements.

17.  Do you have arrangements for the healthcare needs of your residents?_____ If yes, describe these arrangements.

18.  Are your facilities designed to meet the physical, emotional, recreational, social, religious, and/or other similar needs of your elderly or handicapped residents?  _____  If yes, describe these design features in detail.

---

### K.  LOW INCOME HOUSING
*[In an attachment or the space provided, please supply the following information.]*

1.  Describe the type of housing your organization provides.

2.  Explain how the public is made aware of your facility.

3.  Provide copies of your organization's admission application forms.

4a.  Provide a description of each facility your organization operates.
   b.  Indicate whether residents at each facility rent or purchase housing.
   c.  Indicate the total number of residents each facility can accommodate.
   d.  Indicate the current number of residents at each facility.

5.  Provide a sample copy of your organization's residency or homeownership contract or agreement.

6.  Do you or will you contract with another organization to develop, build, market or finance your housing?  _____  If yes, identify the entity, explain how it is selected, how the terms of any contract(s) are negotiated at arm's length, and how your organization determines it will pay no more than fair market value for services provided.

7.  Do you or will you manage your activities or facilities through your own employees or volunteers?  _____  If no, provide a statement describing the activities that will be managed by others, the names of the persons or organizations that mange or will mange your activities or facilities, and how these managers were or will be selected.  Explain the major terms of any

11

**Ex. 10-26**

contracts (or provide copies), how the contracts or other agreements were or will be negotiated, and explain how you determine you will pay no more than fair market value for services provided.

8. Do you participate in any government housing programs? _____ If yes, please describe the programs.

9. Does your organization own the facility? _____ If no, explain from whom and on what basis you are leasing it.

10. Does your organization provide low income housing? _____ If yes, describe who qualifies for your housing in terms of income levels or other criteria. Describe how you select persons for your housing.

11. In addition to rent or mortgage payments, do residents pay periodic fees or maintenance charges? _____ If yes, identify the fees, describe what they cover and how they are determined.

12. Is your housing affordable to low income residents? _____ If yes, describe how your housing is made affordable to low income residents.

13. Does your housing meet the guidelines of Rev. Proc. 96-32, 1996-1 C.B. 717? _____ Please explain in detail how it satisfies these guidelines.

14. Do you impose any restrictions to make sure that your housing remains affordable to low-income residents? _____ If yes, describe these restrictions.

15. Do you provide social services to residents? _____ If yes, describe these services.

---

## L.  FOREIGN RELIGIOUS ORDERS

1. Does your organization constitute the incorporation or establishment of an entity under U.S. civil law that comprises or includes members of a foreign religious order working in the U.S.? _____

2. In an attachment, please explain the reasons for incorporating or establishing your organization as a U.S. civil law entity and for seeking inclusion in the USCCB Group Ruling.

3. How many foreign religious comprise or are members of your organization? _____

**Ex. 10-27**

**4.  Does your organization have canonical status? _____  If yes, please indicate its canonical status _____, and provide documentation of that status.**

**5.  What is name and country of origin of the foreign religious order of which your religious are members? _____**
**Please indicate the page on which this religious order is listed in the *Annuario Pontificio* _____.**

**6.  Does or will your organization engage in fundraising in the U.S.? _____**
**If yes, please indicate the purpose and method of such fundraising.**
**_____**
**If yes, will funds collected be transmitted to the foreign religious order or other foreign organization? _____**

**7.  Please identify the religious superior of the foreign religious who comprise or are members of your organization?  _____**
**Is this religious superior also a member of your organization? _____  If no, where is this religious superior located?  _____**

**8.  Does any U.S. Church entity have discretion or control over the funds of this organization? _____  If so, please identify the U.S. Church entity _____ _____ and the OCD page on which it is listed. _____**

---

**M.  AUTHORIZATION FOR INCLUSION IN USCCB GROUP RULING**

**The undersigned officer of the applicant organization: (1) has examined the foregoing application and the accompanying documents and attachments; (2) believes them to be true, correct, and complete; and (3) consents to inclusion of the applicant organization in the USCCB Group Ruling.**

**Signature:   _____**

**Name:   _____**

**Date: _____   Title:   _____**

13

**Ex. 10-28**